**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **RICHARD CRAIG ROONEY,** | § | |
| | § | |
| **Fed. Reg. No. 31655-380,** | § | |
| | § | **Cause Number: EP-16-CV-0026-DB** |
| **Movant,** | § | **EP-14-CR-213(1)-DB** |
| | § | |
| **v.** | § | |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Respondent.** | | |

**GOVERNMENT'S (1) RESPONSE TO ROONEY'S MOTION UNDER 28 U.S.C. § 2255
TO VACATE, SET ASIDE, OR CORRECT THE SENTENCE, AND
(2) CROSS-MOTION TO REINSTATE THE INDICTMENTS**

The United States of America, by and through the United States Attorney for the Western District of Texas and the undersigned Assistant United States Attorneys, respectfully files this, the Government's Response to Richard Craig Rooney's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence" (ECF No. 360), and the Government's Cross-Motion to Reinstate the Indictment (ECF No. 1), Superseding Indictment (ECF No. 132), and Second Superseding Indictment (ECF No. 156).

After complex negotiations, the Government and Rooney entered into a plea agreement on January 9, 2015. The parties agreed that Rooney would plead guilty to a felony violation of 18 U.S.C. § 208 and, in exchange, the Government would dismiss the pending Indictments. The Government also agreed that, in the event Rooney fully complied with the terms of the plea agreement and provided substantial assistance, the Government would consider filing a motion for downward departure pursuant to U.S.S.G. § 5K1.1. During the negotiations, the Government repeatedly and expressly rejected Rooney's multiple requests to plead guilty to a misdemeanor.

At Rooney's sentencing hearing, the Government complied with its promises under the terms of the plea agreement by filing a motion pursuant to 5K1.1 for a downward departure and by moving to dismiss the Indictments. The Government motioned for downward departure and for dismissal of the Indictments based upon a good faith belief that Rooney was honoring the terms of the plea agreement and had accepted responsibility for his criminal activity. The Court granted the motions and sentenced Rooney principally to a term of 30 months' imprisonment.

Rooney now reveals, through his § 2255 motion, that his counsel recognized a mistake in the Information prior to sentencing (i.e., that the Information did not allege "willfulness"), and that this information was withheld from both the Court and the Government, thereby inducing the Government to file its 5K1.1 motion and to dismiss the Indictments, unaware that Rooney would later attack an essential component of the plea agreement. Despite his agreement to plead guilty to a felony, Rooney now seeks to capitalize on the mistake by claiming that he did not willfully commit the offense and by asking the Court to reward him with a misdemeanor sentence, thereby allowing Rooney to enjoy all of the benefits of the plea agreement, including the dismissal of the Indictments, while depriving the Government of the core benefit it received from the agreement, namely, a felony conviction. His request—which offends basic principles of fairness and undermines the integrity of the plea bargaining process—is unsupportable.

As set forth below, Rooney's motion establishes that his plea was not voluntarily or knowingly entered because he maintains that he did not commit the crime willfully. Accordingly, the plea should be set aside. In addition, under established Fifth Circuit precedent, because Rooney has repudiated the plea agreement through his position on sentencing, the proper remedy is for the Court to restore the parties to their positions before the defunct plea agreement by vacating the plea and reinstating the Indictments.

Because the plea should be set aside, Rooney's claims of ineffective assistance of counsel are moot. In the event the Court does reach those claims, they also fail. Rooney argues, for example, that his trial attorney was ineffective for failing to raise the misdemeanor objection before sentencing. However, he cannot establish that, but for trial counsel's error, he would have received a different result (that is, a misdemeanor sentence). If trial counsel had raised the objection prior to sentencing, the government would have moved to reopen the plea hearing and, upon Rooney's refusal to admit willfulness, the Government would have moved the Court to set aside the plea and set a trial date on the Indictments. Rooney's other claims of ineffective assistance of counsel are likewise meritless.

## Background

### A.     The Indictments

On October 8, 2014, a federal grand jury sitting in the El Paso Division of the Western District of Texas returned a sixty-seven count Second Superseding Indictment in cause number EP-14-CR-213-DB, charging Rooney, along with three other individuals and two business entities. The Second Superseding Indictment charged Rooney with conspiracy to violate 42 U.S.C. § 1320a-7b(1) and (2) (the Anti-Kickback Statute), in violation of the general conspiracy statute, 18 U.S.C. § 371 (Count One); illegal remunerations involving Federal Health Care Programs, in violation of 42 U.S.C. § 1320a-7b (Counts Two and Three); conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349 (Count Four); wire fraud and aiding and abetting the same, in violation of 18 U.S.C. §§ 1343 and 2 (Counts 5-43); conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h) (Count 44); laundering of monetary instruments and aiding and abetting the same, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(1) and 2 (Counts 45-61); false statements to a Federal Agency, in violation of 18 U.S.C. § 1001(a)(2)

(Counts 62-63); wire fraud and deprivation of honest services, in violation of 18 U.S.C. §§ 1343 and 1346 (Count 66); and mail fraud and deprivation of honest services, in violation of 18 U.S.C. §§ 1341 and 1346 (Count 67).[1]

**B.      The Government's Repeated Rejection of Rooney's Requests for a Misdemeanor Plea**

As discussed below, Rooney pled guilty to a one count Information on January 9, 2015 pursuant to a written plea agreement with the Government. Prior to the plea, the Government and Rooney's trial counsel, Mary Stillinger, engaged in complex negotiations regarding the terms of the plea agreement. During the negotiations, Ms. Stillinger and her client made multiple requests for a misdemeanor plea, but these requests were repeatedly rejected.

The Government's rejection of Rooney's requests for a misdemeanor is evidenced in part by email communications between the parties. In early December 2014, Rooney's trial counsel, Mary Stillinger, traveled to the San Antonio Division of the U.S. Attorney's Office for the Western District of Texas ("USAO-WDTX"), to plead Movant's request for a dismissal of charges or for a misdemeanor to the Chief of the Criminal Division of the USAO-WDTX, Margaret Leachman. Ms. Stillinger was accompanied by attorney Bernard Panetta. At the meeting, the Government rejected Rooney's requests. On December 10, 2014, following the meeting, Ms. Stillinger emailed Chief Leachman. Ms. Stillinger referenced the potential of her client entering a plea to "a 208 or 209 *felony,*" (emphasis added), and added, "I know you told me that a misdemeanor was not an option. Is that the final word?" That same day, Chief Leachman responded, "Mary, a misdemeanor is not an option." The aforementioned emails are being filed with this Court under seal.

---

[1]      The original Indictment was returned on February 5, 2014 (ECF No. 1) and the Superseding Indictment was returned on October 1, 2014 (ECF No. 132).

In an email to government counsel on January 4, 2015, Ms. Stillinger acknowledged that the government would only entertain a felony plea, but again requested a misdemeanor plea. Government counsel responded to Ms. Stillinger by again rejecting a misdemeanor plea. The aforementioned emails are being filed with this Court under seal.

On or about January 7, 2015, on the eve of trial, Rooney began cooperating with the Government. During a proffer interview with the Government, at which Ms. Stillinger was present, Rooney again requested a misdemeanor plea, which the Government again rejected.

During the plea negotiations that ensued after Rooney's cooperation, Rooney asked to plead to a violation outside the Indictment, because, he claimed, a conviction for a violation of § 208 would be less detrimental to his career than one of the counts in the Indictment. Although the Government had previously refused to allow Rooney to plead to a felony violation of § 208, the Government ultimately agreed to grant Rooney a substantial concession by allowing him to do so, but only in the event that Rooney's cooperation led to the plea of co-defendant Julia Eller.[2]

Because Ms. Eller did plead to one of the counts in the Indictment, the Government allowed Rooney to plead to the felony violation of § 208.

---

[2]    During the plea negotiations, government counsel and Ms. Stillinger discussed the issue of willfulness as an element of the statute to which Rooney pled. As noted above, on January 4, 2015, Ms. Stillinger sent an email to government counsel in which she acknowledged that the government would only entertain a felony plea to a violation of 18 U.S.C. § 208, but continued to request a misdemeanor plea. Ms. Stillinger then discussed the *mens rea* applicable to 18 U.S.C. § 208, writing, "I know that the difference between the felony and misdemeanor provisions of section 208 are only the word 'willfully' (in section 216--the penalty section). I take that to mean a willfullness (sic) like *Cheek*--a knowing violation of the law. *I think that means that factually there is little difference between the provisions.*" (emphasis added). Government counsel responded, "I know you know the definition of willfulness in *Cheek* is restricted to only certain Tax violations . . . ." (citations omitted).

**C.     Rooney's Agreement to Plead Guilty to a Felony, As Set Forth in the Plea Agreement**

On January 9, 2015, Rooney pled guilty to a single-count Information (ECF No. 274), pursuant to a written plea agreement (ECF No. 277) with the Government.  Under the terms of the plea agreement, Rooney agreed to plead guilty to a violation of 18 U.S.C. § 208 and, in exchange, the Government agreed to dismiss the original Indictment, Superseding Indictment, and Second Superseding Indictment.  (ECF No. 277 at p. 1).

The plea agreement memorialized the parties' understanding that Rooney would plead guilty to a felony violation of 18 U.S.C. § 208.  Section II of the plea agreement, entitled "Range of Punishment," states:

> The defendant, **RICHARD CRAIG ROONEY**, understands that the maximum punishment for the offense set forth in Count One of the Information is a term of imprisonment of not more than five (5) years, and a fine not to exceed Two Hundred Fifty Thousand Dollars ($250,000.00) or both fine and imprisonment, and that he will be required to pay a $100.00 special assessment.  The defendant has had the supervised release procedure explained to him, and understands that he can be subject to a term of supervised release of not more than three (3) years.

Thus, Rooney expressly acknowledged that the offense to which he was pleading guilty carried a maximum term of five years' imprisonment.

At his Rule 11 proceeding, Rooney stated, after being sworn in, that he understood that the maximum term of imprisonment was five years.  (Plea Tr. at 10).  In particular, the Court asked, "Now, if you do enter a plea of guilty, the maximum  possible sentence you may receive is incarceration of 0 to 5 years, and/or a fine of 0 to $250,000, plus supervised release of 0 to 3 years, and a $100 assessment to the Crime Victim's Fund. Do you understand what the maximum possible sentence can be if you enter a plea of guilty here today, Mr. Rooney?" Rooney responded, "Yes, Your Honor."  (Plea Tr. at 10).

**D.    Rooney's Sentencing Hearing and the Government's Performance of Its Obligations Under the Plea Agreement at Sentencing**

On September 21, 2015, the Probation Office issued its Presentence Investigation Report. (ECF No. 321-1).  The Probation Office calculated Rooney's Sentencing Guidelines range, based upon a total offense level of 38 and a criminal history category of I, as 235 months to 293 months' imprisonment.

In accordance with the terms of the plea agreement, the Government filed a memorandum pursuant to U.S.S.G. § 5K1.1 detailing Rooney's substantial assistance and requesting a departure from the statutory maximum (five years' imprisonment) to 36 months' imprisonment. The Government filed its motion based upon a good faith belief that Rooney had complied with his promise in the plea agreement to cooperate fully in the investigation and that his "cooperation [was] to the fullest extent possible and truthful."

On September 25, 2015, Rooney appeared for sentencing.  The Court rejected Rooney's request for probation and sentenced him to a term of 30 months' imprisonment, a fine of $15,000, a $100 special assessment, and a term of 3 years' supervised release.  (ECF No. 334). In accordance with its promises under the plea agreement, the Government moved to dismiss the pending Indictments.  The Court granted the motion.

At the sentencing hearing, based on the representations of all counsel, this Court granted defense counsel's oral request for additional time to negotiate a restitution amount.

On September 28, 2015, a Judgment in a Criminal Case was filed in cause number EP-14-CR-213DB(1), addressing only the term of imprisonment, the term of supervised release, and fine. (ECF No. 334).  The Judgment in a Criminal Case did not reflect the amount of restitution, in light of the hearing that was scheduled to be held at a later date.

### E.     The Contested Restitution Hearing

In his plea agreement, Rooney agreed, in part, "to pay the amount of restitution, as determined by the United States Probation Officer, to the victim(s) of defendant's criminal activity in a manner as directed by the United States Probation Officer."  (ECF No. 277 at 3).

Notwithstanding his promise to pay restitution, on January 13, 2016, Rooney filed a "Responsive Memorandum of Law Regarding Restitution" (ECF No. 349), asserting that he "caused no loss to the Army" and that "no restitution is owed." (ECF No. 349 at 1, 10).  Rooney refiled the motion under seal on January 22, 2016.  (ECF No. 359).

On January 13, 2016, the Court held a contested restitution hearing in which both parties had an opportunity to call and cross-examine witnesses.

At the hearing, the Court ordered the government to submit its argument regarding restitution by January 19, 2016, and ordered Movant to submit his response by January 28, 2016. By Order dated January 20, 2016, the deadline was extended to February 4, 2016.  (ECF No. 356).  On February 3, 2016, Movant, through newly acquired counsel, Todd Maybrown and Gary Hill, filed a motion for a 45-day extension of their deadline.  (ECF No. 366).

### F.     The Pending § 2255 Motion

Rooney did not file a notice of direct appeal.  Instead, on January 21, 2016, Rooney filed the instant motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence.  (ECF Nos. 360 & 361).

On February 5, 2016, the Court entered an "Order for Service" in which, among other things, the Court ordered the Government to show cause why the motion should not be granted. (ECF No. 367).

**ARGUMENT AND AUTHORITIES**

**I.      ROONEY'S § 2255 MOTION ESTABLISHES THAT HIS PLEA OF GUILTY WAS ENTERED INVOLUNTARILY AND UNKNOWINGLY**

While Rooney requests relief based on the allegation that the Court imposed an illegal sentence that exceeds the maximum for a misdemeanor and based on the alleged ineffective manner in which his trial counsel handled the case after discovering the error, Movant overlooks the pertinent legal issue: Rooney's § 2255 motion establishes that he did not enter his plea of guilty knowingly and voluntarily because he was not admonished concerning every element of the crime and has now asserted, under penalty of perjury, that he did not commit the crime willfully.

**A.      Applicable Law**

Federal Rule of Criminal Procedure 11 provides, in part, that before the court accepts a plea of guilty, "the court must inform the defendant of, and determine that the defendant understands," among other things, "the nature of each charge to which the defendant is pleading." Fed.R.Crim.P. 11(b)(1)(G).

"A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). "Where a defendant pleads guilty to a crime without having been informed of the crime's elements, this standard is not met and the plea is invalid." *Id.* (citing *Henderson v. Morgan,* 426 U.S. 637 (1976)).

The Supreme Court has "never held that the judge must himself explain the elements of each charge to the defendant on the record." *Id.* Rather, "[t]he constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and

the elements of the crime were explained to the defendant by his own, competent counsel." *Id.* Thus, a "plea will be upheld even if [a] state trial judge fails to explain the elements of the offense, provided it is shown by the record, or the evidence adduced at an evidentiary hearing if one proves necessary, that the defendant understood the charge and its consequences." *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985).

In *Henderson*, the Supreme Court held that a defendant's plea of guilty to second degree murder was involuntary where the trial court found that the defendant had not been informed that, under New York law, intent to kill was an essential element of the offense to which he pled. The Court explained that a guilty plea cannot be voluntary "unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Henderson*, 426 U.S. at 645 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)).

**B.     Although Rooney knew he was pleading guilty to a felony, he was not admonished regarding *willfulness* and now maintains that he did not commit the crime willfully**

Here, there is no dispute that Rooney agreed to plead guilty to a felony, that he intended to plead guilty to a felony, and that, on January 9, 2015, he believed he had pled guilty to a felony.  In his sworn Declaration, Rooney admits, "Before I changed my plea to guilty, I was told that I could face up to five years in prison for the offense. The Court provided the same notice at the time of my change of plea hearing. The possibility of a prison sentence caused me great concern."  (Rooney Decl. ¶ 6).  In Section II of the plea agreement, entitled "Range of Punishment," Rooney acknowledged that he understood "that the maximum punishment for the offense set forth in Count One of the Information is a term of imprisonment of not more than five (5) years and a fine not to exceed Two Hundred Fifty Thousand Dollars ($250,000.00) or both

fine and imprisonment," among other things.  Thus, there is no question that the government, Rooney, and Rooney's trial counsel intended for Movant's Information to be a felony violation of § 208.

Nevertheless, Rooney now asserts, under penalty of perjury, that he did not commit a willful violation of 18 U.S.C. § 208.  In his declaration, he writes, "I steadfastly maintain that I did not commit a willful violation of 18 U.S.C. § 208.  I was not charged with a willful violation of the statute; and I did not admit to a willful violation of this statute."  (Rooney Decl. ¶ 5). Rooney repeats this position in his Memorandum, stating, "I was not charged with a willful violation of the statute; and I did not admit to a willful violation of this statute."  (Rooney Mem. at 3).  *See also* Rooney Mem. at 8 ("Dr. Rooney's plea agreement and the detailed factual basis in support of the plea does [*sic*] not support a claim that Dr. Rooney engaged in a willful violation of Section 208.").

The issue described by Rooney in his Declaration and in the Memorandum, that is, Rooney's assertion that he did not act "willfully" when he engaged in the criminal conduct, is analogous to the issue in *Henderson*, *supra*, in which the Supreme Court held that a defendant's plea was involuntary where the defendant had not been advised of the intent element of his crime.  As such, the facts and circumstances as described by Rooney require a finding that his plea violated the Due Process Clause of the Constitution, not as a result of ineffective assistance of counsel or of an illegally imposed sentence, but rather because Rooney did not knowingly and voluntarily enter his plea of guilty.

Accordingly, based upon Rooney's assertions in this 2255 motion, Rooney's plea should be vacated, and Rooney should be allowed to plead anew or proceed to trial.

II.  **BECAUSE ROONEY HAS REPUDIATED THE PLEA AGREEMENT, THE PROPER REMEDY IS TO VACATE THE PLEA AND REINSTATE THE INDICTMENTS**

In his motion, Rooney asks the court to impose a misdemeanor sentence, thereby discarding the core term of the plea agreement, namely, that Rooney agreed to a felony offense. In essence, Rooney is asking this Court to rewrite the plea agreement so that Rooney receives substantial benefits—a misdemeanor sentence, dismissal of the Indictments, an ability to challenge restitution notwithstanding his promise to pay restitution, a withdrawal of his promise not to collaterally attack the sentence, and the Government's 5K1.1 motion—while the Government, on other hand, would be deprived of the core benefit it received from the agreement, a felony conviction. His request is meritless. As explained below, under controlling Fifth Circuit precedent, where a defendant has repudiated a plea agreement, the remedy is to vacate the plea and reinstate the previously dismissed charges.

A.  **Applicable Law**

"When defendant repudiates the plea bargain, either by withdrawing the plea or by successfully challenging his conviction on appeal, there is no double jeopardy (or other) obstacle to restoring the relationship between defendant and state as it existed prior to the defunct bargain." *United States v. Kim*, 884 F.2d 189, 191 (5th Cir. 1989); *accord Fransaw v. Lynaugh*, 810 F.2d 518, 524-26 (5th Cir. 1987) ("The cases hold with apparent unanimity that when defendant repudiates the plea bargain, either by withdrawing the plea or by successfully challenging his conviction on appeal, there is no double jeopardy (or other) obstacle to restoring the relationship between defendant and state as it existed prior to the defunct bargain.").

A defendant who challenges a sentence in contravention of a plea agreement repudiates the plea agreement, but that repudiation entitles the government to a reinstatement of the

previously dismissed charges. *See, e.g.*, *Moore v. Foti*, 546 F.2d 67, 68 (5th Cir. 1977) ("appellant's successful challenge to his plea-bargained sentence is a tacit repudiation of the bargain, allowing the government to prosecute him on the greater charge") (*per curiam*); *United States v. Atkins*, 834 F.2d 426, 442 (5th Cir. 1987) (instructing district court that, if defendant's challenge to sentence is successful on remand, then "by his actions [defendant] will have tacitly repudiated the plea bargain" and, therefore, "it would be appropriate for [the district court] to reinstate count two of the Texas indictment which the government dismissed as part of its plea bargain with [the defendant]"), *overruled on other grounds by Taylor v. Whitley*, 933 F.2d 325 (5th Cir. 1991). *Cf. United States v. Moulder*, 141 F.3d 568, 572 (5th Cir. 1998) (where defendant successfully challenged his conviction on a § 2255 motion, such that "the underlying purpose of the [plea] agreement [was] frustrated and the basis of the government's bargain [was] destroyed," the government's obligations under the plea agreement were dischargeable under frustration of purpose doctrine) (quoting *United States v. Bunner*, 134 F.3d 1000, 1005 (10th Cir. 1998)).

Underlying these Fifth Circuit decisions is a concern for principles of fairness and the integrity of the plea bargaining process. In *Fransaw*, 810 F.2d at 524, the Fifth Circuit analyzed cases that have held that a defendant may be prosecuted on counts dismissed as part of a vitiated plea bargain. The court observed, "[w]e believe these cases are instructive . . . because of their palpable concern for fairness and the integrity of the plea bargaining process." *Fransaw*, 810 F.2d at 524. The court further explained, "[W]e discern in the cases a judicial regard for fairness, namely, a defendant should not be able to reject a plea bargain and then erect the shield of double jeopardy to the revived counts. This concern for fairness (and for the integrity of the plea

bargaining process) is equally compelling when the plea is entered and abandoned after trial begins." *Id.* at 526.

This Court should reject Rooney's unwarranted attempt to use a § 2255 motion as both a shield and a sword.

**B.     Discussion**

By seeking a misdemeanor, Rooney has expressly rejected the central provision in his plea agreement that the maximum term of imprisonment for the offense was five years. To allow such relief would deprive the government of the key benefit it received from the bargain, a felony conviction. Thus, the remedy is to vacate the plea, reinstate the previously dismissed charges, and allow Rooney either to plead anew or proceed to trial.

The Fifth Circuit's decision in *Kim*, 884 F.2d 189, supports this conclusion. The defendant, Mr. Kim, was charged with three counts of tax evasion in violation of 26 U.S.C. § 2701. He pled guilty to count II in exchange for dismissal of the remaining counts against him and all of the counts against his wife. At sentencing, the defendant argued that another person was responsible for the underreporting and that the defendant himself lacked the willfulness required for the offense. The government moved to withdraw the plea on the ground that the defendant disputed willfulness; the district court declined to accept the plea and ordered the defendants to trial. A jury found both Mr. Kim and Mrs. Kim guilty on all counts. On appeal, Mr. Kim asserted that the trial on count II violated the Double Jeopardy Clause of the Fifth Amendment, arguing that he did not request to withdraw his guilty plea but only to mitigate his sentence. The Fifth Circuit disagreed, explaining:

> Mr. Kim . . . argues that his plea was withdrawn on the government's motion, and that he never requested withdrawal of the plea but only sought to mitigate the sentence by presenting evidence on the severity of the offense. *The position taken by Mr. Kim at the sentencing hearing, however, amounted to a repudiation of the plea agreement. By denying willfulness, an element of the crime, Mr. Kim undermined the factual basis for the plea and thereby rejected the plea agreement.* The district judge therefore properly tried Mr. Kim on Count II.

*Id.* at 192. The Court further recognized that, "[w]hen defendant repudiates the plea bargain, either by withdrawing the plea or by successfully challenging his conviction on appeal, there is no double jeopardy (or other) obstacle to restoring the relationship between defendant and state as it existed prior to the defunct bargain." *Id.* at 191 (quoting *Fransaw*, 810 F.2d 518 at 524-25).

**C.     Cases Relied Upon by Rooney Are Neither Controlling Nor Persuasive Authority**

In support of his request for a misdemeanor sentence, Rooney relies principally on the Tenth Circuit's decision in *United States v. Frownfelter*, 626 F.3d 549 (10th Cir. 2010), for the proposition that the government is bound to the plea agreement, notwithstanding Rooney's rejection of a core provision. This decision is inapposite.

As an initial matter, the Tenth Circuit's decision conflicts with established Fifth Circuit precedent holding that, when a defendant repudiates a plea agreement, the relationship between defendant and the government is restored to the position as it existed prior to the defunct bargain. *E.g.*, *Kim*, 884 F.2d at 191 (when defendant repudiates a plea agreement, "there is no double jeopardy (or other) obstacle to restoring the relationship between defendant and state as it existed prior to the defunct bargain"); *Foti*, 546 F.2d at 68 ("appellant's successful challenge to his plea-bargained sentence is a tacit repudiation of the bargain, allowing the government to prosecute him on the greater charge").

Putting aside the fact that *Frownfelter* has no precedential effect in the Fifth Circuit, the facts in *Frownfelter* are readily distinguishable from the instant case. In *Frownfelter*, the

defendant was charged with eleven counts of theft of government funds, in violation of 18 U.S.C. § 641, for his role in receiving $24,596 in assistance payments to which he was not entitled. Pursuant to a written plea agreement with the government, the defendant pled guilty to count eleven, which charged him with receipt of $559 on a specific date. During his plea hearing, Frownfelter confirmed his understanding that he was pleading guilty to a felony. However, prior to sentencing, Frownfelter realized that Count Eleven actually charged a misdemeanor, because it was less than $1,000. He alerted the court prior to sentencing, but the government insisted that the count was a felony because it incorporated the language of the introductory paragraphs in the indictment. Frownfelter appealed.

On appeal, the government acknowledged the error but argued that the proper remedy was to void the plea agreement and reinstate all of the counts from the original indictment, under the contract doctrines of frustration of purpose and mutual mistake. The Tenth Circuit disagreed. Central to the court's decision was a finding that the misdemeanor/felony distinction was not a particularly meaningful distinction in the parties' agreement. In rejecting the frustration of principle argument, the court explained:

> [T]he record does not support the United States' contention that the felony/misdemeanor distinction was so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense. . . . Nor does the government advance any reasoned argument explaining the asserted centrality of obtaining a felony conviction. By pleading guilty to count eleven—without regard to whether the count was a felony or a misdemeanor— Frownfelter was exposed to an advisory Guidelines sentencing range of six to twelve months' imprisonment, was required to pay substantial restitution, and saved the government the time and expense of proceeding to trial. Any additional collateral consequences of a felony conviction, which the government fails to identify in its brief, appear tangential to these core benefits obtained by the government. By no means can we declare that the plea agreement makes little sense, when properly construed as requiring Frownfelter to plead guilty to a misdemeanor.

*Id.* at 554-55 (internal citations and quotation marks omitted). The Tenth Circuit rejected the government's argument regarding mutual mistake for the same reason, explaining:

> [N]othing in the language of the plea agreement indicates that the distinction between misdemeanor and felony was a basic assumption of the plea agreement . . . . The government has not provided any basis to conclude that the felony/misdemeanor distinction was particularly meaningful. . . . [T]he government does not show the mistake had a material effect on the agreed exchange . . . . [T]he government wholly fails to explain how the felony/misdemeanor distinction is a crucial component of the bargain, much less how the distinction renders the resulting imbalance in the agreed exchange is so severe that [the government] cannot fairly be required to carry it out.

*Id.* at 555-56 (internal citations and quotation marks omitted).

Unlike *Frownfelter*, the misdemeanor/felony distinction in Rooney's plea agreement was crucial to the parties' deal. Frownfelter was charged in an eleven count indictment for his role in stealing $24,596; his guidelines' range was six to twelve months' imprisonment. In contrast to Frownfelter, Rooney was charged in a 67-count indictment for his role in a scheme to defraud the United States Department of Defense of $7 million and to launder the proceeds, which he committed while serving as a Lt. Col. in the U.S. Army; his guidelines range was 235 months to 293 months' imprisonment. The Government repeatedly rejected Rooney's requests for a misdemeanor plea. Thus, unlike *Frownfelter*, the felony/misdemeanor distinction in Rooney's plea agreement was "a crucial component of the bargain," and the "resulting imbalance in the agreed exchange [would be] so severe that [the government] cannot fairly be required to carry it out," *Frownfelter*, 626 F.3d at 556.[3]

Rooney's requested relief (for a misdemeanor) fails for another reason as well. In *Frownfelter*, the Tenth Circuit recognized that "remedial decision-making is guided not merely by contract principles, but by considerations of fairness and the integrity of the judicial system." *Id.* at 554. Rooney's position—that he should be entitled to a misdemeanor—offends elementary

---

[3]      The Government's insistence on a felony conviction was well-founded in light of the gravity of Rooney's crimes, committed during the course of Rooney's military service at two U.S. Army hospitals. The prosecution was the culmination of a four-year investigation by multiple federal agencies, including Defense Criminal Investigation Service, Army Major Procurement Fraud, and the Federal Bureau of Investigation.

principles of fairness and undermines the integrity of the judicial system and plea bargaining process.  The Government and Rooney agreed, in his plea agreement, for Rooney to plead to a felony. In exchange, Rooney received substantial concessions, including dismissal of the Indictments. At sentencing, the Government complied with its promises under the plea agreement by moving to dismiss the Indictments and moving for a downward departure, based upon a good faith belief that Rooney had accepted responsibility for his criminal activity and was honoring his agreement.  Rooney's counsel did not notify either the government or the Court about the error in the Information.

Rooney now wants this Court to excise the terms of the plea bargain that are unpalatable to him—the felony, his promise to pay restitution, and his promise not to collaterally attack the sentence—while preserving the terms of the agreement that benefit him, including dismissal of the Indictments.  His request is unsupportable. *See, e.g.*, *Kim*, 884 F.2d at 191; *Fransaw*, 810 F.2d at 518.

The Seventh Circuit's decision in *United States v. Peterson*, 268 F.3d 533, (7th Cir. 2001) describes the type of predicament that Rooney faces.  The defendant, one Scott Peterson, agreed to pay restitution in his plea agreement in a prosecution for bank fraud. In exchange, he received considerable concessions, including dismissal of four of six counts in the indictment. Notwithstanding his promise to pay restitution, Peterson argued on appeal that the court lacked jurisdiction to order restitution.  The Seven Circuit observed:

> Peterson insists that the plea agreement is not a valid implementation of [18 U.S.C.] § 3663A(a)(3). It is not clear that he understands the principal implication of this position: that his plea must be set aside, the four dismissed counts reinstated, and the prosecution resumed in the district court. He appears to believe that he can have the benefits of the plea agreement (four counts dismissed, reduced time in prison) without the detriments. That's not an option. The whole plea agreement stands, or the whole thing falls.

*Id.* at 534.

The other cases cited by Rooney are likewise not controlling or persuasive authorities for the proposition that the government must be held to the plea agreement notwithstanding Rooney's repudiation of its core provisions. In particular, Rooney cites *United States v. Manzo*, 675 F.3d 1204 (9th Cir. 2012), *United States v. White*, 597 F.3d 863 (7th Cir. 2010), and *United States v. Castillo*, 303 Fed.Appx. 989 (2d. Cir. 2008). However, none of these cases involved the issue pending before this Court, namely, whether a defendant who repudiates the core provision in a plea bargain may continue to enjoy the benefits of the agreement.

Based upon the foregoing, the proper remedy is to vacate Rooney's plea, reinstate the Indictments, and allow Rooney to plead anew or proceed to trial.

## III. THE PLEA SHOULD ALSO BE SET ASIDE AND THE INDICTMENTS REINSTATED BECAUSE THERE WAS NO MEETING OF THE MINDS AND BECAUSE OF THE PARTIES' MUTUAL MISTAKE

As set forth below, the plea must be set aside and the Indictments reinstated because there was no meeting of the minds between the parties regarding willfulness.

Courts apply general principles of contract law to interpret the terms of a plea agreement. *See, e.g.*, *United States v. Long*, 722 F.3d 257, 262 (5th Cir. 2013); *United States v. Cantu*, 185 F.3d 298, 304 (5th Cir. 1999). "[O]rdinary contract principles require a 'meeting of the minds' between the parties in order for agreements to be valid." *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003) (citing *Louisville & N.R. Co. v. Kentucky*, 161 U.S. 677, 692 (1896)). "[W]hen the government proposes a plea agreement, when the defendant accepts it and when the district court enforces it, there must be a meeting of minds on all of its essential terms. Among the essential terms is the nature of the charge to which the defendant pleads." *United States v. Bradley*, 381 F.3d 641, 648 (7th Cir. 2004) (internal citations and quotation marks omitted). *Cf. United States v. Moulder*, 141 F.3d 568, 572 (5th Cir. 1998) (where defendant

successfully challenged his conviction on a § 2255 motion, such that "the underlying purpose of the [plea] agreement [was] frustrated and the basis of the government's bargain [was] destroyed," the government's obligations under the plea agreement were dischargeable under frustration of purpose doctrine) (quoting *United States v. Bunner*, 134 F.3d 1000 (10th Cir. 1998)).

Here, Rooney asserts, in his affidavit, that he did not intend to admit the element of willfulness, which is a fact required for a felony violation of § 208. The Government, however, intended for Rooney to plead to the requirements for a felony violation of § 208, expressly rejected a misdemeanor plea during plea negotiations, and would not have agreed to the concessions in the plea agreement (including the dismissal of other serious charges) if Rooney were pleading to a misdemeanor. Because there was no meeting of the minds regarding an essential term of the plea agreement and the nature of the charge to which the defendant was pleading guilty, the plea was invalid. *See, e.g.*, *Bradley*, 381 F.3d at 648 (invalidating plea agreement and vacating judgment because there was no meeting of the minds on the nature of the charge to which the defendant pled; "[g]iven the parties' mutual mistake as to an essential element of the plea agreement, the entire agreement is invalidated").

The complicated and many-faceted definitions of "willfulness" in the criminal statutes and case law further establish that there was no meeting of the minds in this case. The Supreme Court has recognized that "willful" is a "'word of many meanings'" whose construction is "'often . . . influenced by its context." *Ratzlaf v. United States,* 510 U.S. 135, 141 (1994) (alteration in original) (quoting *Spies v. United States,* 317 U.S. 492, 497 (1943)). *See also Bryan v. United States*, 524 U.S. 184, 191 (1998) ("The word 'willfully' is sometimes said to be 'a word of many meanings' whose construction is often dependent on the context in which it appears."); *United*

*States v. George*, 386 F.3d 383, 389 (2d Cir. 2004) ("Divining the meaning of 'willfully' in criminal statutory *mens rea* terms has long bedeviled American courts.").[4]

Accordingly, because there was no meeting of the minds regarding an essential element of the plea (namely, the nature of the charge), the proper remedy is to set aside the plea and to reinstate the charges.[5]

## IV. TRIAL COUNSEL'S PERFORMANCE WAS NOT CONSTITUTIONALLY DEFICIENT AND DID NOT PREJUDICE THE MOVANT

Because the plea should be set aside for the reasons set forth in Parts I through III above, Rooney's claims regarding ineffective assistance are moot. Nevertheless, in the event that the Court does reach these issues, the Government addresses each claim.

---

[4]    The Committee on Pattern Jury Instructions for the Fifth Circuit has declined to provide a global definition of the mental state "willfully." *See* Fifth Circuit Pattern Jury Instructions, § 1.38 ("Willfully-To Act") (2015) ("The Supreme Court has cautioned that the required mental state may be different even for different elements of the same crime . . . . The Committee has therefore abandoned the indiscriminate use of the term 'willfully' accompanied by an inflexible definition of that term. Instead, we have attempted to define clearly what state of mind is required, i.e., what the defendant must know and intend to be guilty of the particular crime charged.").

[5]    In the alternative, the plea should be set aside and the indictments reinstated because of the parties' mutual mistake in failing to identify the absence of "willfulness" in the Information. *See* Restatement Second of Contracts § 152 (1981) ("Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake . . . ."). Here, the difference between a felony and misdemeanor was an essential element to the parties' agreement. Thus, the remedy is to void the agreement and reinstate the Indictments. *See, e.g.*, *United States v. Williams*, 198 F.3d 988, 994 (7th Cir. 1999) (where defendant argued that "both parties to the contract were under the mistaken belief that the maximum sentence he could receive for all counts of the indictment was ten years," and that "if it had not been for that mistaken assumption, he would not have entered into th[e] Agreement," "[i]t is clear from the basic principles of contract law that the remedy for a contract formed under these circumstances is to void the contract, not to offer [the defendant] the opportunity to reform it unilaterally"); *Bradley*, 381 F.3d at 648 ("Given the parties' mutual mistake as to an essential element of the plea agreement, the entire agreement is invalidated.").

**A.       Standard of Review for Claims of Ineffective Assistance of Counsel**

A defendant who complains of ineffective assistance of counsel must show that said counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Spriggs v. Collins*, 993 F.2d 85, 87 (5th Cir. 1993); *United States v. Gipson*, 985 F.2d 212, 215 (5th Cir. 1993); *United States v. Kinsey*, 917 F.2d 181, 183 (5th Cir. 1990); *United States v. Smith*, 915 F.2d 959, 963 (5th Cir. 1990) (all citing to *Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984)).

To be entitled to habeas corpus relief on the ground that counsel rendered ineffective assistance, a petitioner must show that counsel's performance was constitutionally deficient and that the deficient performance prejudiced the defense. *Burnett v. Collins*, 982 F.2d 922, 928 (5th Cir. 1993); *Bates v. Blackburn*, 805 F.2d 569, 577 (5th Cir. 1986). Failure to demonstrate prejudice pretermits the Court's inquiry regarding the alleged deficiency of counsel's performance. *See United States v. Rosalez-Orozco*, 8 F.3d 198, 199 (5th Cir. 1993); *United States v. Pierce*, 959 F.2d 1297, 1302 (5th Cir. 1992).

The prejudice prong of the two part *Strickland* test, however, continues to be the primary hurdle to be cleared in sixth amendment assistance-of-counsel cases. *Profitt v. Waldron*, 831 F.2d 1245, 1251 (5th Cir. 1987). The "prejudice" test is objective: "it turns on what a reasonable person in the defendant's shoes would do." *United States v. Smith*, 844 F.2d at 209. Reasonable effective assistance is the proper standard for attorney performance, *Strickland,* 466 U.S. at 687, and judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 689.

In the Fifth Circuit, the standard for constitutionally effective assistance of counsel is not errorless counsel and not counsel judged ineffective by hindsight, but counsel reasonably likely

to render and rendering reasonably effective assistance. *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). As the Court observed in *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir.), *reh'g denied en banc*, 843 F.29 499 (5th Cir. 1988), "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional competence, or that under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (*quoting Strickland*, 466 U.S. at 689); *Loyd v. Whitley*, 977 F.2d 149, 156 (5th Cir. 1992); *Taylor v. Maggio*, 727 F.2d 341, 347 (5th Cir. 1984). A conscious strategic or tactical trial decision is not unreasonable simply because "20/20 hindsight . . . might lead another attorney to opt otherwise*." United States v. Lauga*, 762 F.2d 1288, 1291 (5th Cir. 1985). The burden is on the petitioner to show a reasonable probability that, but for counsel's errors, the result would have been different. *Strickland,* 466 U.S. at 694.

**B.**     **Rooney Cannot Show Ineffective Assistance of Counsel On the Basis of Trial Counsel's Failure to Raise the Misdemeanor Objection Before Sentencing**

Rooney first complains that trial counsel was ineffective for failing to raise the misdemeanor issue before sentencing.

This claim is easily disposed of because Rooney cannot satisfy the prejudice prong of *Strickland*—that is, Rooney cannot show that but for trial counsel's error, he would have received a different result, namely, a misdemeanor sentence. Rooney's ineffective assistance of counsel claim is based upon the erroneous and fanciful assumption that, if counsel had raised the objection prior to sentencing, the government would have allowed the plea to stand and would have moved to dismiss the Indictments at sentencing. To the contrary, the government would have moved to reopen the plea hearing and, upon Rooney's refusal to admit willfulness, the Government would have moved the Court to set aside the plea and set a trial date on the Indictments. Thus, Rooney cannot show a reasonable probability that, but for trial counsel's

error, "the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial," *Harrington*, 562 U.S. at 112 — here, it is inconceivable.

Rooney also fails to establish the first *Strickland* prong, namely, that trial counsel's representation fell below an objective standard of reasonableness for failure to raise the objection. Rooney's motion indicates that his counsel made a strategic decision not to raise the objection before sentencing. But conscious strategic or tactical trial decisions are not unreasonable simply because "20/20 hindsight . . . might lead another attorney to opt otherwise." *United States v. Lauga*, 762 F.2d 1288, 1291 (5th Cir. 1985).

Indeed, Rooney's motion disregards the zealous and competent assistance his attorney provided during the course of the investigation and prosecution. Indeed, through her persistence, Ms. Stillinger secured significant benefits for Rooney by negotiating a plea bargain to a count outside the Indictment, and this represented her client effectively.

## C.     Rooney Cannot Show Ineffective Assistance of Counsel On the Basis of Trial Counsel's Failure to File Motion to Correct Sentence

Rooney next argues that trial counsel was ineffective for failing to file a motion to correct the sentence. This fails for a similar reason as his first claim. Rooney erroneously assumes that, but for trial counsel's error, the Court would have granted a motion to correct his sentence and imposed a misdemeanor sentence. To the contrary, the Government would have moved, as it is doing now, to set aside the plea and reinstate the Indictments. Accordingly, Rooney cannot satisfy the second *Strickland* prong.

**D. Rooney Cannot Show Ineffective Assistance of Counsel On the Basis of Trial Counsel's Failure to File a Notice of Appeal**

Rooney also fails to show ineffective assistance of counsel on the basis of trial court's failure to file a notice of appeal.

To prevail on a claim of ineffective assistance of appellate counsel for failing to raise an issue on appeal, a movant "must show that with effective counsel, there was a reasonable probability that he would have won on appeal." *Moreno v. Dretke*, 450 F.3d 158, 168 (5th Cir. 2006). Rooney has not shown that he would have succeeded in securing a misdemeanor on appeal, as explained in Parts I through III *supra*.

## CONCLUSION

Based upon the foregoing, Rooney's motion should be denied, the plea and sentence should be set aside, and the Indictments reinstated.

Dated: March 3, 2016
El Paso, Texas

Respectfully submitted,

RICHARD L. DURBIN, JR.
United States Attorney for the
Western District of Texas

\                              By:     _____/s/_____
Debra P. Kanof
Texas Bar No. 11093600
Anna E. Arreola
New York Registration No. 4151775
Assistant U.S. Attorneys
`                                       700 E. San Antonio, Suite 200
El Paso, Texas  79901
(915) 534-6884

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2016, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record.

_____/s/_____
Debra Kanof
Assistant U.S. Attorney